to be a public highway throughout, 40 feet in width, without any tracks thereon. And the weight of the testimony is that such a highway will afford a safer, an easier, and a more commodious way than that which may now exist.

[2] I think that the court should not have taken into consideration the sewer and other mains or pipes which are to be laid beneath the surface of the earth, for the reason that the question in this case involves only easements of access which are confined to the surface of the soil. Sutton v. Groll, 42 N. J. Eq. 213, 5 Atl. 901. But in any event, the court found that nothing but the width of the embankment and its use by the defendant would present any obstacle to the laying of mains and pipes, and that such work could be done without unusual difficulty. It appeared also that there is an existing sewer underneath the tracks at Howard street, and that a sewer is now under construction in this territory, with which connections are practicable.

[3] If the question of police and fire protection is to be considered *in the aspect of access to the territory*, it would seem that Bronx Place road, as projected and constructed, even if it involved travel over a greater distance, would, in comparison with alleged existing rights of access, present equal if not better facilities.

Even if the court should find that there was no permanent injury as to the right of access when the improvement was completed, I am not at all prepared to say that, if while the work was doing no proper substituted right of access was afforded to the plaintiffs, they could not have damages therefor. For I think quite to the contrary. Putnam v. B. & P. R. R. Co., supra, citing Penney v. Commonwealth, 173 Mass. 507, 53 N. E. 865, 73 Am. St. Rep. 312; Edmands v. Boston, 108 Mass. 535.

The judgment must be reversed, and a new trial be granted, costs to abide the final award of costs.

HIRSCHBERG, WOODWARD, and RICH, JJ., concur. THOMAS, J., not voting.

---

(73 Misc. Rep. 536.)

In re MUTUAL LIFE INS. CO. OF NEW YORK.

(Supreme Court, Special Term, Albany County. October, 1911.)

INSURANCE (§ 56*)—MUTUAL LIFE INSURANCE COMPANY—TRUSTEES—QUALIFICATIONS.

Absence of any provision in the charter of a life insurance company requiring trustees of the company to be policy holders, together with a provision in the charter that the president shall be a member of the corporation, and the practical construction of its charter and by-laws by the company since its organization in 1842 (Laws 1842, c. 246), requires the construction that the trustees need not be policy holders.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 56.*]

In the matter of the election of the trustees of the Mutual Life Insurance Company of New York. Application of Sol Rosenblatt

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tó review the proceeding and election, and for an injunction. Application denied.

Lester T. Hubbard, for petitioner.

Davies, Auerbach, Cornell & Barry (Julien T. Davies, of counsel), for Joseph H. Choate, Jr., and others.

Frederick L. Allen, for Mutual Life Ins. Co.

Thomas Carmody, Atty. Gen. (Wilber W. Chambers, of counsel), 'for Superintendent of Insurance.

CHESTER, J.  One Sol Rosenblatt has instituted this proceeding to review the election of trustees of the Mutual Life Insurance Company of New York, held on the 5th day of June, 1911. It appears that he was the sole candidate on what was known as the policy holders' ticket. There were 36 candidates on the administration ticket, and the principal claim made by the petitioner is that 6 of the 36 candidates named on such ticket for trustees were ineligible because they were not policy holders in the Mutual Life Insurance Company at the time of the election, and that he has been elected if any one of the 6 is ineligible. There is no dispute that 30 of them were such policy holders. Before the inspectors of election had declared the result of the votes cast, there was an order made by a justice of the court, which restrained them from further proceeding. The affidavits show, however, that the administration ticket received over 13,000 votes and the petitioner not to exceed 2,200 at such election.

Very many highly technical objections to the procedure in reference to the nomination of the administration ticket have been urged in behalf of the petitioner; but, after a careful examination of them all, ·I fail to see that any of them has any force that should be given effect to nullify the election. The nominations and the procedure with reference to the election were had under the supervision of the superintendent of the insurance department, and under the rules and regulations prescribed by him pursuant to law; and to my mind all the provisions of the law in reference thereto have been fully complied with. I will not, therefore, take the time to discuss these technical objections in detail.

The only question that I need to refer to is the principal one urged, and that is as to the alleged ineligibility of six of the candidates on the administration ticket. I fail to find anything in the charter of the company (Laws of 1842, c. 246, as amended by Laws of 1851, c. 60), or in the insurance law (Consol. Laws, c. 28) which requires a trustee of this company to be a policy holder. A very learned and lengthy argument on this subject has been made by the counsel for the petitioner, but the whole matter rests in a nutshell. Section 4 of such charter provides that "the board of trustees shall consist of thirty-six persons all of whom must be citizens of this state; they shall elect a president annually who shall be a member of this corporation"; and section 3 provides that the persons therein named who are insured in the corporation "shall thereby become members thereof." The provision in the charter is clear that the president must be a member of the corporation. There is, however, no provision that

any trustee other than the president shall .be a member. The provision that the president shall be a member and the omission to provide that the other trustees shall be members are significant, and show that the Legislature, when it required this qualification for the president and omitted to require it for the other trustees, intended that such other trustees need not be members; and when it required that the trustees should be citizens it showed the intent not to impose any other qualification upon eligibility. Even that provision appears to have been changed by subdivision 10 of section 70 of the Insurance Law (Consol. Laws 1909, c. 28, § 70, subd. 9), so that now only a majority of them are required to be citizens and residents of the state. The purpose of the law is clear, and shows that the Legislature intended to leave the members who were entitled to choose trustees free to select any persons .they desired to that office, so long as a majority of them were citizens and residents of the state; and there is reason for this position, for many persons possessing the qualifications to render efficient service to the. company in the office of trustee would be unable to become members of the company by reason of being over the insurable age, or because of being physically unable to pass the medical examination requisite for insurable risks. It appears from the papers that the practice of this company from its organization in 1842 down to date, acting under the charter and laws, has been in harmony with this construction; and many men have served and now are serving as trustees who are not policy holders, and therefore not members of the company. This practical construction of the statute during all these years, without any question on the part of any one interested in the welfare of the company, is entitled to much weight.

The injunction contained in the order to show cause should be vacated and the application denied, with costs.

Application denied.